IN THE SUPREME COURT OF MISSISSIPPI

NO. 2005-CA-02220-SCT

*COVENANT HEALTH REHAB OF PICAYUNE,*
*L.P., ITS SUCCESSOR AND INTEREST OF*
*PICAYUNE PARTNERS, L.P., d/b/a PICAYUNE*
*CONVALESCENT CENTER; COVENANT DOVE,*
*INC.; AND KERI LADNER*

*v.*

*BARBARA N. BROWN, MARGARET GRACE AND*
*SHARON GOSS ON BEHALF OF THE*
*WRONGFUL DEATH BENEFICIARIES OF*
*BERNICE BROWN*

DATE OF JUDGMENT:         10/24/2005
TRIAL JUDGE:              HON. R. I. PRICHARD, III
COURT FROM WHICH APPEALED: PEARL RIVER COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANTS: PAUL HOBART KIMBLE
                          JOHN L. MAXEY, II
ATTORNEY FOR APPELLEES:   WOODROW W. PRINGLE, III
NATURE OF THE CASE:       CIVIL - CONTRACT
DISPOSITION:              AFFIRMED IN PART; REVERSED AND
                          REMANDED IN PART- 02/22/2007
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**SMITH, CHIEF JUSTICE, FOR THE COURT**:

¶1.     Plaintiffs, on behalf of the decedent, Bernice Brown, filed a wrongful death suit

against the convalescent center in which the decedent resided immediately prior to her

admission to the hospital, where she died. Defendants filed a Motion to Compel Arbitration,

seeking to enforce the arbitration provision in the admissions agreement, and Plaintiffs

sought to have the agreement voided with their Motion to Declare Contract Unconscionable

and Void. The trial court struck several clauses in the admissions agreement, including the arbitration provision, finding them substantively unconscionable, prompting this appeal.

¶2. We affirm the trial court's finding that the admissions agreement was not procedurally unconscionable. We further affirm the trial court's striking as unconscionable C5, C8 and E7, limiting liability; E8, waiving punitive damages; E5 and E6, providing different judicial remedies to the parties; E12, requiring all resolution costs from one party; and E16, limiting the statute of limitations.

¶3. However, we find that the trial court erred in striking the remaining three provisions in the admissions contract as unconscionable and in denying Defendants' motion to compel arbitration. Thus, we continue our precedent of striking unconscionable terms and leaving the remainder of the agreement intact, adhering to our decision in *Russell v. Performance Toyota, Inc.*, 826 So. 2d 719, 724-29 (Miss. 2002). We reverse and remand with instructions to require the parties to submit to arbitration.

## FACTS AND PROCEDURAL HISTORY

¶4. On April 8, 2005, Barbara Brown, Sharon Goss, and Margaret Grace, as administrators of the estate of their mother Bernice Brown, filed a complaint in Pearl River County Circuit Court. The complaint alleged that the decedent had been grossly neglected while a resident at Picayune Convalescent Center, from March 19, 2004, until June 2, 2004, and that the center's negligence was the direct and proximate cause of Brown's death on July 5, 2004.

¶5.    On June 17, 2005, Defendants filed a motion to compel arbitration, pursuant to the arbitration provision in the admissions agreement signed by the decedent.  The motion requested, in the alternative, to stay the proceedings until the issue of arbitration might be decided.  The trial court, granted the motion on July 6, 2005, ordering a continuance of the trial for resolution of the arbitration-related issues.  Plaintiffs filed a motion to declare the admissions agreement unconscionable and void on July 11, 2005, alleging (1) that the agreement was procedurally and substantively unconscionable; (2) that the deceased was incompetent and incapable of understanding the agreement and the terms of the same; (3) that Sharon Goss, signing as a responsible party, had no authority to sign on behalf of Bernice Brown; and (4) that Sharon Goss lacked the capacity to understand the agreement and did not understand the same when she signed it.  On October 26, 2005, the court entered an Order granting Plaintiffs' motion, finding the arbitration provision substantively unconscionable and striking all provisions related to arbitration or the limitation of remedies, namely sections C5, C8, D4, E5, E6, E7, E8, E12, E13, E16, and F of the admissions agreement.

¶6.    Defendants filed a notice of appeal on November 14, 2005, appealing three issues: 1) whether the admissions contract is enforceable when the resident and her responsible party signed the agreement; 2) whether the trial court erred in finding the contract substantively unconscionable; and 3) whether the trial court erred in denying Defendant's motion to compel.

3

¶7.     The issues raised essentially inquire whether the trial court properly denied Defendants' motion to compel. Thus, the issues will be consolidated to answer that one question.

¶8.     This Court applies a de novo standard of review to denials of motions to compel. ***Vicksburg Partners, L.P. v. Stephens***, 911 So. 2d 507, 513 (Miss. 2005). We divide the question into two lines of inquiry.

I.      **Whether the Trial Court Erred in Not Finding That the Admissions Agreement Was Procedurally Unconscionable Even Though the Resident and Her Responsible Party Signed the Agreement.**

¶9.     Plaintiffs assert that the admissions agreement is procedurally unconscionable because Brown was incompetent and incapable of entering into a contract, and Goss had no authority to bind Brown.

¶10.    With regard to Goss's authority to bind Brown, Defendants cite Miss. Code Ann. § 41-41-211 (Rev. 2005) which says in pertinent part:

> (1) A surrogate may make a health-care decision for a patient who is an adult or emancipated minor if the patient has been determined by the primary physician to lack capacity and no agent or guardian has been appointed or the agent or guardian is not reasonably available.
>
> (2) An adult or emancipated minor may designate any individual to act as surrogate by personally informing the supervising health-care provider. In the absence of a designation, or if the designee is not reasonably available, any member of the following classes of the patient's family who is reasonably available, in descending order of priority, may act as surrogate:

4

(a) The spouse, unless legally separated; (b) An adult child; (c) A parent; or (d) An adult brother or sister.

(7) A health-care decision made by a surrogate for a patient is effective without judicial approval.

Plaintiffs submit in their motion that Brown was incapable of managing her affairs at the time she entered the hospital. Neither party presents a declaration by Brown's primary physician stating that she was incapable of managing her affairs prior to the signing of the admission agreement, but Plaintiffs state in their motion that Brown's admitting physician at the hospital found that she did not have the mental capacity to manage her affairs. Seeing that Brown was incapacitated by virtue of admission by her representatives and corroboration by her admitting physician, she was capable legally of having her decisions made by a surrogate. Her adult daughter, Goss, was an appropriate member of the classes from which a surrogate could be drawn, and thus, Goss could contractually bind Brown in matters of health care.

¶11. Having confirmed Goss' authority to sign the agreement, the remaining inquiry is whether Goss signed the agreement in a voluntary and knowledgeable manner. In *Vicksburg Partners*, this court considered an assertion of procedural unconscionability where the daughter, serving as the responsible party, admitted her father to a nursing home. *Vicksburg Partners*, 911 So. 2d at 510, 516-20. There are two considerations for procedural unconscionability: (1) lack of voluntariness and (2) lack of knowledge. *Id.* at 517-518 (citing *Entergy Miss., Inc. v. Burdette Gin Co.*, 726 So. 2d 1202, 1207 (Miss. 1998)).

¶12. Goss contends that she signed the agreement in a manner that was not voluntary and not knowing, since the admissions agreement was one of adhesion, the print was

5

inconspicuous, and she did not understand the legal terms. This Court has stated that "[c]ontracts in which one party has minimal bargaining power, also referred to as contracts of adhesion, are not automatically void. Instead, the party seeking to avoid the contract generally must show that it is unconscionable. There is nothing per se unconscionable about arbitration agreements." *Vicksburg Partners*, 911 So. 2d. at 518 (internal quotes and citations omitted).

¶13. In *Vicksburg Partners*, the court found that there was no procedural unconscionability, in that:

> there were no circumstances of exigency; the arbitration agreement appeared on the last page of a six-page agreement and was easily identifiable as it followed a clearly marked heading printed in all caps and bold-faced type clearly indicating that section "F" was about "Arbitration;" the provision itself was printed in bold-faced type of equal size or greater than the print contained in the rest of the document; and, appearing between the arbitration clause and the signature lines was an all caps bold-faced consent paragraph drawing special attention to the parties' voluntary consent to the arbitration provision contained in the admissions agreement. Under these facts, it can not be said that there was either a lack of knowledge that the arbitration provision was an important part of the contract or a lack of voluntariness in that [the resident and his responsible party] somehow had no choice but to sign.

This description of the facts, including the location and format of the arbitration provision in the agreement in *Vicksburg Partners* is identical to the provision in this case, thus controlling in the case at bar. Therefore, we find that in accordance with *Stephens*, there is no procedural unconscionability in this admissions agreement. The trial court correctly found no procedural unconscionability.

6

## II. Whether the Trial Court Erred in Finding the Stricken Provisions of the Contract Substantively Unconscionable.

¶14. When determining whether a contract is substantively unconscionable, we look within the four corners of an agreement. *Vicksburg Partners*, 911 So. 2d at 521. Contracts comprised of terms oppressive in character may be found unconscionable. *Id.* (citing *East Ford,* 826 So. 2d at 714). For a per se finding of unconscionability, the Court must find the contract at issue "by its very language significantly alters the legal rights of the parties involved and severely abridges the damages which they may obtain." *Vicksburg Partners*, 911 So. 2d at 521. Further, as mentioned before, while the type of contract at issue was found to be one of adhesion, that fact does not automatically necessitate a finding of procedural or substantive unconscionability. *Id*. at 518, 521-22. A party seeking to avoid the contract must show that such contract is unconscionable. *Id.* at 518.

¶15. Section D4[1] enforces the contract entered into by the decedent against her heirs beyond her death. The United States Supreme Court has held that "[i]t is a presumption of law that the parties to a contract bind not only themselves but their personal representatives. Executors, therefore, are held to be liable on all contracts of the testator which are broken in his lifetime, and, with the exception of contracts in which personal skill or taste is required,

[1]Section D4 reads verbatim in bold print: Notwithstanding any other provision set forth herein, Sections C5, E5, E6, E7, E8, E9, E12, E13, E14, E15 and F as set forth in this Agreement shall survive the termination for any reason of this Agreement and shall survive and shall not be revoked by the death of any Party hereto including the Resident. Said provisions shall be binding on the estate of the Resident in the event the Resident is deceased.

on all contracts broken after his death." ***United States ex rel. Wilhelm v. Chain***, 300 U.S. 31, 35, 57 S. Ct. 394, 396, 81 L. Ed. 487, 490 (1937). This Court has held that arbitration agreements, specifically, are not invalidated by the death of the signatory and may be binding on successors and heirs if provided in the agreement. ***Cleveland v. Mann***, 942 So. 2d 108, 118 (Miss. 2006). Therefore, all of the provisions in D4 that remain upon this Court's ruling are enforceable by and against both the decedent's administrators and the nursing home. We find that the trial court clearly erred in striking this provision.

¶16. The trial court also struck the clauses concerning limited liability and punitive damages. Section E7 limits the amount of damages awardable in a dispute between the nursing home and the resident. ***Vicksburg Partners, L.P. v. Stephens***, 911 So. 2d 507, 523 (Miss. 2005) (quoting ***East Ford, Inc. v. Taylor***, 826 So. 2d 709, 716 (Miss. 2002)). The exact language in E7 of the contract at issue was found unconscionable in ***Vicksburg Partners***.[2] ***Id.*** at 522-23. Similarly, sections C8[3], waiving liability for criminal acts of

---

[2] Section E7 in both ***Vicksburg Partners*** and the case *sub judice* read verbatim in bold print: "Should any claim, dispute or controversy arise between the Parties or be asserted against any of the Facility's owners, officers, directors, or employees, the settlement thereof shall be for actual damages not to exceed the lesser of a) $50,000 or b) the number of days that Resident was in the Facility multiplied times the daily rate applicable for said Resident. This limitation of liability shall be binding on the Resident, Responsible Party, and the Resident's heirs, estate and assigns."

[3] Section C8 reads verbatim: "The Parties hereto agree to waive punitive damages against each other and agree not to seek punitive damages under any circumstances."

individuals, and C5[4], requiring forfeiture by the resident of all claims except those for willful acts, are also unconscionable under *Vicksburg Partners*. *See id*. at 523. The sections creating a limitation on liability – C5, C8, and E7 – are unenforceable and were properly stricken by the trial court from the admissions agreement.

¶17. Also, in *Vicksburg Partners* this Court found a waiver of punitive damages applying to both parties (one very similar to section E8[5] in the contract at issue) unconscionable due to its potentially significant effect of substantial deprivation to the resident and benefit to the nursing home. *Vicksburg Partners*, 911 So. 2d at 523. Consistent with *Vicksburg Partners*, the trial court properly struck section E8.

¶18. The "grievance resolution process" as laid out in sections E5[6] and E6 is unconscionable pursuant to *Pitts* where a very similar clause allowing the care facility to bring suit in court on issues of payment and prohibiting the resident from bringing to bring suit in court on any grounds was one-sided, oppressive, and unconscionable. *Pitts v.*

---

[4] The pertinent portion of section C5 reads verbatim in bold print: "The Resident and Responsible Party further agree to indemnify and hold harmless the Facility from and against claims, loss, costs and expenses incurred as a result of claims against the Facility for any reason by the Responsible Party, family members and friends of the Resident unless such claim, loss, cost and expense if the result of the Facility's willful conduct."

[5] Section E8 reads verbatim: "The Parties hereto agree to waive punitive damages against each other and agree not to seek punitive damages under any circumstances."

[6] The pertinent portion of section E5 reads verbatim: "In the event a claim, dispute and/or controversy shall arise between the Parties other than regarding matters concerning the payment for services rendered or refunds due, the Parties agree to participate in a grievance resolution process."

9

*Watkins*, 905 So. 2d 553, 555-56 (Miss. 2005). These provisions were properly stricken by the trial court in accordance with *Pitts*.

¶19.   As for section E12[7], which requires the resident to pay all costs for enforcement of the agreement if the resident avoids or challenges either the grievance resolution process or an award therefrom, it is akin to a clause analyzed in *Pitts* which stated that if the plaintiff failed to comply with a particular term in the contract the plaintiff must pay "any and all fees associated with collection, including but not limited to administration costs, attorney's fees, and cost of litigation." *Pitts*, 905 So. 2d at 556. This Court found that those terms unreasonably favored the defendant, and, thus, that the arbitration clause containing these terms was "one-sided, oppressive and therefore, substantively unconscionable." *Id.* Based on this analysis, the trial court properly struck this section from the contract at issue.

¶20.   Section E16 of the contract prohibits legal action by a resident "more than one year following the happening of the event giving rise to [the] complaint, claim, or grievance."[8] This Court will not enforce a contractually created time limitation on suits. Modifications to

---

[7]Section E12 reads verbatim: "In the event a Party fails to proceed with mediation and/or arbitration, challenges the arbitrator's award, or fails to comply with the arbitrator's award, the other Party is entitled to all costs of suit or action including reasonable attorney fees for having to defend or enforce the arbitration award or having to defend or enforce the mediation or arbitration provision set forth herein."

[8]Section E16 reads verbatim in bold print: "Other than the mediation requirement set forth in Section E6, no legal action shall be initiated against the Facility by the Resident or any other Party hereto prior to sixty days following the filing of a written grievance setting forth a description of the acts or omissions complained of, nor in any event more than one year following the happening of the event giving rise to such complaint, claim or grievance."

the statute of limitations cannot be accomplished by contract, and any attempt to do so will be void. *Pitts*, 905 So. 2d at 558 (citing Miss. Code Ann. §15-1-5 (Rev. 2003)). Accordingly, this Court has refused to enforce an admissions contract, such as in this case, which attempts to modify the statute of limitations. In *Pitts*, the admissions agreement limited the legal action to within one year, in contradiction to the three-year statute of limitations, and we held that the attempt to create a private statute of limitations was oppressive and unconscionable. *Id.* at 558. Consistent with *Pitts,* this section was properly struck as unconscionable by the trial court.

¶21. Section E13[9] waives the right of all parties to a jury trial. The provision waives the right of a jury trial for both the nursing home and the resident. Thus it is not one-sided. The provision has the same effect as signing an arbitration agreement. It is well established that this Court respects the ability of parties to agree to the means of dispute resolution prior to a dispute and enforces the plain meaning of a contract as it represents the intent of the parties. *Russell v. Performance Toyota, Inc.* 826 So. 2d 719, 722 (Miss. 2002); *I. P. Timberlands Operating Co. v. Denmiss Corp.*, 726 So. 2d 96, 108 (Miss. 1998). Therefore, the trial court improperly struck E13.

¶22. With regard to Section F, the arbitration provision, the very heart of the dispute, *Vicksburg Partners* is the controlling case. As in this case, the dispositive issue was whether the arbitration provision rendered the subject admissions agreement unenforceable.

---

[9]Section E13 reads verbatim: All Parties hereto are hereby waiving all rights to a jury trial.

11

*Vicksburg Partners*, 911 So. 2d at 517. The admissions agreement contained numerous other provisions, some of which were found unconscionable. *Id.* at 526. Two such provisions were used to justify striking similar provisions in this case. *Id.* at 523-24. Moreover, the arbitration provision was identical to the one in this case. [10] *Id.* at 510-11. The provision even included the last sentence of the provision in this case, referencing section E7, which was found unconscionable and stricken as in this case. *Id.* at 523. This Court concluded that the arbitration provision was not unconscionable.

¶23. Seeing that "[q]uestions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration," *Vicksburg Partners*, 911 So. 2d at 513, one factor negating an assertion of unconscionability was that the provision was typical of those

---

[10] Section F in both *Vicksburg Partners* and in this case read verbatim in bold print: "The Resident and Responsible Party agree that any and all claims, disputes and/or controversies between them, and the Facility or its Owners, officers, directors, or employees shall be resolved by binding arbitration administered by the American Arbitration Association and its rules and procedures. The Arbitration shall be heard and decided by one qualified Arbitrator selected by mutual agreement of the Parties. Failing such agreement each Party shall select one qualified Arbitrator and the two selected shall select a third. The Parties agree that the decision of the Arbitrator(s) shall be final. The Parties further agree that the Arbitrators shall have all authority necessary to render a final, binding decision of all claims and/or controversies and shall have all requisite powers and obligations. If the agreed method of selecting an Arbitrator(s) fails for any reason or the Arbitrator(s) appointed fails or is unable to act or the successor(s) has not been duly appointed, the appropriate circuit court, on application of a party, shall appoint one Arbitrator to arbitrate the issue. An Arbitrator so appointed shall have all the powers of the one named in this Agreement. All Parties hereto agree to arbitration for their individual respective anticipated benefit of reduced costs of pursuing a timely resolution of a claim, dispute or controversy, should one arise. The Parties agree to share equally the costs of such arbitration regardless of the outcome. Consistent with the terms and conditions of this Agreement, the Parties agree that the Arbitrator(s) may not award punitive damages and actual damages awarded, if any, shall be awarded pursuant to Section E.7."

12

endorsed by the Federal Arbitration Act, *Id.* at 521.   The provision contained another characteristic of a conscionable provision in that it was found to bear "some reasonable relationship to the risks and needs of the business." *Id.* at 517 (citing *Entergy Miss., Inc. v. Burdette Gin*, 726 So. 2d 1202, 1207 (Miss. 1998). This Court found the provision language not to be oppressive but, rather, to provide the plaintiffs with a fair process through which to pursue their claims.  *Vicksburg Partners*, 911 So. 2d at 521. *Vicksburg Partners* deemed the exact language that composed the entirety of Section F to be substantively conscionable. *Id.* Accordingly, we reach the same result in this case.

¶24.    In light of recent precedent, this Court must reverse the trial court's findings as to the enforcement of the arbitration provision and the resultant denial of Defendants' motion to compel arbitration. However, consistent with the analysis above, the last sentence of the arbitration provision, which limits liability pursuant to sections E7 and waives punitive damages, must be stricken from Section F.

¶25.    We choose to enforce the remainder of the contract without the unconscionable clause. Miss. Code Ann. § 75-2-302(1) (1972).   Parties may agree on the means of dispute resolution, including arbitration, in any way they desire. *B. C. Rogers Poultry, Inc. v. Wedgeworth*, 911 So. 2d 483, 491 (Miss. 2005). Contracts are solemn obligations, and the court must give them effect as written. *Id.* at  487. In light of this duty, it is well-established that when interpreting arbitration agreements, or any contract, "if a court strikes a portion of

13

an agreement as being void, the remainder of the contract is binding."[11] **Russell**, 826 So. 2d

at 724-25 (citing **Lawler v. Government Employees Ins. Co.**, 569 So. 2d 1151, 1153 (Miss.

1990); **Plaza Amusement Co. v. Rothenberg**, 159 Miss. 800, 131 So. 350, 357 (1930) ("If

an illegal condition is annexed to a contract, it will not void the whole contract, but the illegal

part will be treated as void"). Accordingly, we strike the unconscionable terms and leave the

remainder of the agreement intact.

## CONCLUSION

¶26.    We affirm the trial court's finding that the admissions agreement was not procedurally

unconscionable.

¶27.    Further, we affirm the trial court in striking the sections found to be unconscionable:

C5, C8, and E7, limiting the facility's liability; E8, waiving punitive damages; E5 and E6,

providing availability of judicial remedies for one party and eliminating it for the other; E12,

placing the burden of all costs of non-compliance with or challenges to the grievance

resolution process on the resident; and E16, limiting the statute of limitations.

¶28.    However, the remainder of the admissions agreement is enforceable. Accordingly, we

reverse the trial court in its judgment as to the striking of the remaining three provisions as

unconscionable. Section D4, which binds the decedent's heirs to comply with the admissions

---

[11]In **Vicksburg Partners** the Court relied on **Russell** to enforce section E1 of the contract at issue in **Vicksburg Partners**, which is identical to the section E1 in the contract at dispute in this case, calling for severance of unenforceable terms and enforcement of the remainder of the agreement. **Vicksburg Partners**, 911 So. 2d at 524-45. *See* **Russell,** 826 So. 2d at 724-25.

agreement, is supported by recent precedent, and precedent necessitates that we reverse the trial court's judgment striking as unconscionable the jury trial waiver in section E13 and the arbitration agreement in section F.

¶29.    Further, regarding section F, the arbitration provision, the trial court erred in denying the nursing home's motion to compel, and that judgment is reversed and the case remanded to the Circuit Court of Pearl River County with directions to compel the parties to submit to arbitration.

¶30.    **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**COBB, P.J., EASLEY, CARLSON AND DICKINSON, JJ., CONCUR. WALLER, P.J., CONCURS IN PART. DIAZ, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY GRAVES, J. RANDOLPH, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, P.J., AND IN PART BY DIAZ, J.**

**DIAZ, JUSTICE, DISSENTING:**

¶31.    We are faced today with a contract for illegal services. While I agree with the majority that portions of the contract are void due to unconscionability, I must respectfully dissent because the document is wholly void as a matter of law.

¶32.    It is bedrock law that a contract for illegal services is void. It is now a centuries-old concept that "*ex dolo malo non oritur actio*," which means that "[n]o Court will lend its aid to a man who founds his cause of action upon an immoral or an illegal act." ***Morrissey v. Bologna***, 240 Miss. 284, 300-01, 123 So. 2d 537, 545 (1960). "This rule in Mississippi applies to contracts cases as well, preventing relief on a claim based on a contract that is

15

illegal or against our state's public policy." ***Price v. Purdue Pharma Co.***, 920 So. 2d 479, 484-85 (Miss. 2006).

¶33.   "There is no doubt that the courts have the duty and the power to declare void and unenforceable contracts made in violation of law or in contravention of the public policy of the state." ***Smith v. Simon***, 224 So. 2d 565, 566 (Miss. 1969).   There are three general situations where we will not permit a contract to stand.   First, "when the principal purpose of the contract directly furnishes aid and protection to an illegal enterprise;" second, "when in order to enforce the contract a party must base his cause of action on his own illegal act;" and third, "where the contract itself is unlawful." ***Id.*** at 566 (citing ***Smith v. Maryland Casualty Co.***, 252 Miss. 81, 172 So. 2d 574 (1965) (involving fidelity bond covering employees who misappropriated illegal liquor); ***Capps v. Postal Telegraph-Cable Co.***, 197 Miss. 118, 19 So. 2d 491 (1944) (involving failure to deliver a telegram concerning a gambling contract); ***Powelson v. National Airlines***, 220 Miss. 595, 71 So. 2d 467 (1954), (involving a contract to purchase stock in violation of a federal statute), and ***Morrissey v. Bologna***, 240 Miss. 284, 123 So. 2d 537 (1960) (involving indebtedness for illegal liquor).

¶34.   The case at hand involves a nursing home, which furnishes services to those in need and may only do so legally by agreeing to certain rules and regulations established by the Mississippi Department of Health and the Legislature.   In this case, Covenant Health has attempted to contract away its binding duties under the law, which it cannot do.   In its order, the trial court specifically noted Covenant Health's attempt to illegally avoid state and federal

16

regulations governing nursing homes by the contract. The agreement contains several attempts to illegally contract away the minimum standards of care as provided by the state.

¶35. We will examine each illegal portion in turn.

**I. B1: The Responsibility of the Facility.**

¶36. The Mississippi Regulations Governing Licensure of Nursing Home Facilities set out the minimum standard for daily care in a nursing home facility: "To be classified as a facility, the institution shall comply with the following staffing requirements . . . [m]inimum requirements for nursing staff shall be based on the ratio of two and eight-tenths (2.80) hours of direct nursing care per resident per twenty-four (24) hours." Miss. Reg. 12-000-045 § 201.1(a). There is no stated exception in the regulations for any reason.

¶37. However, Section B1 of the Agreement states that "[t]he Facility agrees to furnish general duty nursing and nurse aide care equal to at least the State Medicaid minimum hours per Resident day (this is generally approximately 2.0 to 2.8 hours per Resident day on average including administration time). Temporary periods of extreme bad weather, strikes, unusual labor problems or similar disruptions may result in temporary periods below this average."

¶38. Accordingly, this provision attempts illegally to contract for services below the minimum standards required by state regulation.

**II. C5: Indemnification.**

¶39. Displayed in bold print, the section reads in pertinent part that "[t]he Resident and Responsible Party further agree to indemnify and hold harmless the Facility from and against claims, loss, costs and expenses incurred as a result of claims against the Facility for any

17

reason by the Responsible Party, family members and friends of the Resident unless such claim, loss, cost and expense is the result of the Facility's willful misconduct."

¶40.    This clause purports to create total indemnity against the facility for negligence or any other action that is not "willful misconduct." On its face, this clause is illegal, as it violates the Rules, Regulations and Minimum Standards for Institutions for the Aged or Infirm, the set of regulations the state of Mississippi has adopted governing nursing homes. Specifically, the regulations mandate that "[n]o agreement or contract shall be entered into between the licensee and the resident or his responsible party which will relieve the licensee of responsibility for the protection of the person and of the rights of the individual admitted to the facility for care, as set forth in these regulations." Miss. Reg. 12-000-45, § 404.3(b).

¶41.    This section should also be read in concert with section C7, which purports to "agree" that "the Facility primarily provides room and board and limited nursing care and is not responsible for the actions or inactions of the attending physician, pharmacy and other health care professionals not primarily compensated by the Facility." This section also attempts to illegally disclaim liability in violation of Section 404.3(b).

**III.  C7:  Licensees and Agents.**

¶42.    Section C7 begins by stating "[t]hat the Resident and/or Responsible Party are responsible for securing the care of a qualified licensed and qualified attending physician for the patient." This attempts to illegally contract around three separate regulations. Section 504.2 of Miss. Reg. 12-000-045 states that "[e]ach resident shall have a designated physician or nurse practitioner who is responsible for their care," and [i]n the absence of the designated

18

physician or nurse practitioner, another physician or nurse practitioner shall be designated to supervise the resident medical care." Additionally, Section 504.3 mandates that "[t]he facility shall arrange for the provision of physician or nurse practitioner services twenty-four (24) hours a day in case of an emergency." Likewise, Section 504.4 commands that "[t]he resident shall be seen by a physician or nurse practitioner every sixty (60) days."

¶43.    If the facility receives Medicare or Medicaid monies, it is required under federal regulations to provide care by a physician.  "The facility must ensure that: (1)  The medical care of each resident is supervised by a physician; and (2) Another physician supervises the medical care of residents when their attending physician is unavailable."42 C.F.R. 483.40 (a). Additionally, "[t]he resident must be seen by a physician at least once every 30 days for the first 90 days after admission, and at least once every 60 days thereafter." 42 C.F.R. 483.40 (c)(1).

¶44.    Accordingly, it is not the duty of the resident to secure a physician; it is the non-delegable duty of the nursing home, as required under state and federal regulation.  Covenant Health's attempt to delegate this regulatory responsibility to a resident is yet another example of its attempt to contract for illegal services.

## IV.  C8:  Indemnity for Criminal Acts.

¶45.    Section C8 of the agreement reads in whole that:

> Subject to the Facility complying with Section B.6 [agreeing that the facility will "perform criminal background checks on all nursing department personnel upon initial hiring of said personnel"], the Resident and Responsible Party agree that should any individual or individuals, whether employees of the Facility or not, commit any criminal act upon or against the Resident or

19

Responsible Party, that the Resident and Responsible Party agree to seek damages and claims only against said individuals(s). Accordingly, the Parties hereto agree to hold harmless the Facility, its officers, owners, directors and employees for the criminal actions of any individual(s).

Like section C5, this clause is illegal on its face, as it violates the Mississippi state regulations governing nursing homes, which mandate that "[n]o agreement or contract shall be entered into between the licensee and the resident or his responsible party which will relieve the licensee of responsibility for the protection of the person and of the rights of the individual admitted to the facility for care, as set forth in these regulations." Miss. Reg. 12-000-45, § 404.3(b).

**V. E5 and E16: Notice Requirements and Statutes of Limitation.**

¶46. Section E5 purports illegally to modify Mississippi statutes by requiring that "written notice shall be delivered within 20 days of the date of the incident giving rise to the claim." Section E16 requires that, "[o]ther than the mediation requirement" of 20 days, "no legal action shall be initiated against the Facility by the Resident or any other Party hereto prior to sixty days following the filing of a written grievance . . . ."

¶47. Under Mississippi law, only certain types of actions require written notice; for example, the Code requires 60 days' written notice before filing suit against certain health care providers. Miss. Code Ann. § 15-1-36 (15) (Rev. 2003). This clause attempts to materially deviate from the language of this statute, which we have held must be strictly observed, as "[a]ny different approach would render meaningless any rule or statute setting time limitations on litigants." *Arceo v. Tolliver*, 2006 Miss. LEXIS 385, *17 (Miss. 2006).

20

¶48. It further places a notice requirement on a resident or responsible party when non-medical negligence is asserted, such as a premises liability claim, which is not authorized by common law or statute. This attempt to create a notice requirement not present in our state statutes and to alter and shorten the existing statutory requirement for notice is further evidence of an attempt to contract around the statute of limitaitons.

¶49. Additionally, E16 purports to change our statutorily-set statute of limitations and common law, asserting that "no legal action shall be initiated against the Facility . . . in any event more than one year following the happening of the event giving rise to such complaint, claim or grievance." There are three separate areas of impact from this section: first, our statute of limitations for negligence, which is three years (Miss. Code Ann. § 15-1-49 (Rev. 2003)); second, our statute of limitations for medical negligence, which is two years (Miss. Code Ann. § 15-1-36 (2) (Rev. 2003)); and last, the fact that our precedent on the "discovery rule" allows for an action beyond the statutes of limitations in limited circumstances. *See Wright v. Quesnel*, 876 So. 2d 362, 366 (Miss. 2004).

¶50. In *Pitts v. Watkins*, a party attempted to change our three-year statute of limitations for negligence; we declared that "[t]his period of limitation cannot be changed by contract, and any such change in the limitations period shall be null and void," and held that "[t]he attempt to create a private statute of limitations is further evidence of overreaching by [the defendant], is oppressive, violates statutory law and is likewise unconscionable." 905 So. 2d 553, 558 (Miss. 2005). Section E16 parallels the offending clause in *Pitts*, which we noted was in

21

violation of statutory law. These sections both attempt to illegally contract for that which cannot be obtained.

## VI. E7: Limitation of Liability.

¶51. In bold print, Section E7 limits the dollar value that can be awarded in case of a "claim, dispute or controversy." In pertinent part, it states that "the settlement thereof shall be for actual damages not to exceed the lesser of a) $50,000 or b) the number of days the Resident was in the Facility multiplied times the daily rate applicable to said Resident." This clause illegally infringes upon Mississippi state regulations governing nursing homes, which require that each resident "has a right of action for damages or other relief for deprivations or infringements of his right to adequate and proper treatment and care established by an applicable statute, rule, regulation or contract." Miss. Reg. 12-000-045, § 408.2(e).

## VII. E12 and E6: Shared and Shifted Costs.

¶52. The trial court also found sections E12 and E6 indicative of overreaching. In part, E6 requires that "[t]he Parties agree to share equally the costs of such mediation." E12 states in whole that "[i]n the event a Party hereto fails to proceed with mediation and/or arbitration, challenges the arbitrator's award, or fails to comply with the arbitrator's award, the other Party is entitled to all costs of suit or action including reasonable attorney's fees for having to defend or enforce the arbitration award or having to defend or enforce the mediation or arbitration provisions set forth herein."

¶53. The United States Code defines when and under what circumstances a party can appeal an arbitration decision; *see* 9 U.S.C. § 10 (governing method of vacating arbitration awards);

22

9 U.S.C. § 11 (governing modification or correction of awards). These statutes do not provide for an express grant of fees to the party who seeks vacation, modification, or correction. Sections E12 and E6 are thus further demonstration of Covenant Health's attempt to contract for illegal services.

**VIII.  The Case at Hand.**

¶54.    The contract which Covenant Health seeks to enforce has no less than nine separate sections which attempt to avoid its binding obligations under the law.  It is one in a series of contracts considered by this Court that has included increasingly offensive, unconscionable, and flat-out illegal provisions in a contract for nursing home services.  This one appears to be the second time this Court has considered the exact same agreement, as the one at hand tracks the agreement in ***Vicksburg Partners, L.P. v. Stephens***, 911 So. 2d 507 (Miss. 2005). Apparently, little has been learned since that case, and nursing home companies are continuing to attempt to contract for illegal and unconscionable services.  We must decline to enforce even the smallest portion of these illegal contracts until they are free of illegality and unconscionability.

¶55.    It is our sworn duty as a Court to safeguard the rights of all Mississippians, but we must be especially sensitive when dealing with the most vulnerable of our citizens, those in the twilight of their lives.  Nursing home companies provide a valuable service in our society, but they cannot be allowed, unique among all other corporations, to contract for illegal services. The contract Covenant Health wishes us to enforce is repugnant to the statutory and common law of our state and country.  It is simply grotesque.  It cannot be upheld as a matter

23

of law, and because the majority declines to honor this centuries-old prohobition I must respectfully dissent.

**GRAVES, J., JOINS THIS OPINION.**

**RANDOLPH, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶56.  I join the majority's declaration that Sections C5, C8, E5, E6, E7, E8, E12, and E16 are all substantively unconscionable and unenforceable.  However, I respectfully depart from the majority's decision to convert an admittedly, substantively unconscionable provision (Section F) into a conscionable provision, by excising the unconscionable language.  If substantive unconscionability did not otherwise permeate the document, I might well join. But that is not the case.  I conclude that Section F, in its entirety, should face the same fate as the aforementioned sections, and be stricken from the document.

¶57.  The "Admission Agreement" at issue here is virtually identical to the "Admission Agreement" in ***Vicksburg Partners, L.P. v. Stephens***, 911 So. 2d 507 (Miss. 2005),[12] wherein this Court found that the agreement constituted a "contract of adhesion."  ***Id***. at 525.  That finding equally applies here.  "[L]aying a foundation that a contract was one of adhesion makes an argument targeting a provision for a substantive unconscionability review *easier* to prove."  ***Id***. at 523 (emphasis added).

---

[12]The only distinction being that the bottom of the first page of the "Admission Agreement" here states, in bold, that "[t]his Agreement is subject to Arbitration as set forth in Sections E and F."

24

¶58.    "Arbitration is about choice of forum – period." *Id*. at 525. *See also* **East Ford, Inc. v. Taylor**, 826 So. 2d 709, 716 (Miss. 2002) ("[a]rbitration agreements merely submit the question of liability to another forum – generally speaking, they do not waive liability."). Section F, however, covertly alters the legal rights of the parties in favor of Covenant Health, by weaving non-forum issues into the fabric of the section. Specifically, Covenant Health unconscionably inserted terms regarding equal sharing of arbitration costs,[13] the waiver of punitive damages, and the limitation of liability into Section F, the latter two having been expressly rejected by this Court in **Pitts v. Watkins**, 905 So. 2d 553 (Miss. 2005). The language of Section F requires that this Court rely on other sections in the contract by reference, including the consideration of multiple substantively unconscionable clauses, all lacking any relation to forum. Covenant Health further attempts to protect these unconscionable provisions, under the penumbra of an arbitration provision. Such integration of substantively unconscionable clauses into the forum-only sphere of the arbitration provision, is hardly benign and should therefore render Section F invalid, and thus unenforceable. *See* **Sanderson Farms v. Gatlin**, 848 So. 2d 828, 852 (Miss. 2003) (Cobb, J., dissenting; Smith, P.J., and Carlson, J., joining) ("[n]either is it wise to allow companies to draft arbitration clauses with unconscionable provisions and then let them try them out in the marketplace, secure in the knowledge that the courts will at worst sever the offending cost

---

[13]"The Parties agree to share equally the costs of such arbitration regardless of the outcome."

allocation after plaintiffs have been forced 'to jump through hoops in order to invalidate those agreements.' ***Cooper v. MRM Inv. Co.***, 199 F. Supp. 2d 771, 782 (M.D. Tenn. 2002) . . . .").

¶59.    In 2005, this Court in ***Pitts*** held three clauses substantively unconscionable and unenforceable: (1) an arbitration clause which "provide[d] an avenue for Watkins to pursue his claims in a court of law, while requiring the Pittses to arbitrate[,]" ***Pitts***, 905 So. 2d at 555; (2) a limitation of liability clause "preclud[ing] the plaintiff's ability to collect punitive damages . . . [and] plac[ing] an unreasonable restriction to collect compensatory damages in excess of $265[,]" ***id***. at 556; and (3) a contractually-created one-year statute of limitations. *See **id***. at 558.  This Court refused to enforce such provisions. *See **id***.  The majority opines first, that this contract is one of adhesion.  Then the majority is satisfied that this contract of adhesion contains at least eight substantively unconscionable sections: (1) C5 – requiring forfeiture by the resident of all claims against Covenant Health except those for "willful misconduct;" (2) C8 – waiving Covenant Health's liability for the criminal acts of individuals, subject to their performing criminal background checks on all nursing personnel only; (3) E5 and E6 – on the "grievance resolution process" and mediation, and, like the substantively unconscionable arbitration provision in ***Pitts***, allowing Covenant Health to bring suit in court on issues of payment, while prohibiting Brown from bringing suit in court on any grounds; (4) E7 –  the limitation of liability provision; E8 – the waiver of punitive damages provision; E12 – requiring Brown to pay all costs to enforce the agreement if she avoided or challenged the "grievance resolution process" or an award therefrom; and E16 – a contractually-created

one-year statute of limitations.  This agreement violates all three *Pitts* disqualifiers, all the *Vicksburg Partners* disqualifiers, and then some.

¶60.	The majority opinion properly has found significant segments of the "Admission Agreement" to be substantively unconscionable.  Additionally, the dissent suggests instances of Covenant Health attempting to circumvent applicable state regulations by this agreement.  In total, this scenario renders enforcement of the arbitration provision of Section F, which itself contains substantively unconscionable clauses, a legal anomaly.  The majority's excision of unconscionable sections results in this Court rewriting a contract which favors a goal of the nullifying party; an undeserved reward for unconscionable conduct.  I respectfully conclude that Section F is also substantively unconscionable and should be stricken.

**WALLER, P.J., JOINS THIS OPINION.  DIAZ, J., JOINS THIS OPINION IN PART.**