14 So.3d 736 (2008)
COVENANT HEALTH & REHABILITATION OF PICAYUNE, LP and Covenant Dove, Inc., Appellants,
v.
ESTATE OF Mittie M. MOULDS, By and Through James BRADDOCK, Administrator for the use and Benefit of the Estate and Wrongful Death Beneficiaries of Mittie M. Moulds, Appellee.
No. 2007-CA-01250-COA.
Court of Appeals of Mississippi.
August 19, 2008.
Rehearing Denied December 9, 2008.
*738 John L. Maxey, Paul Hobart Kimble, Jackson, attorneys for appellants.
F.M. Turner, Hattiesburg, attorney for appellee.
Before KING, C.J., GRIFFIS, ISHEE and CARLTON, JJ.
ISHEE, J., for the Court.
¶ 1. James Braddock, on behalf of his deceased mother, Mittie M. Moulds, filed suit against Covenant Health and Rehabilitation of Picayune (Covenant Health) for wrongful death relating to his mother's stay at one of their facilities, the Picayune Convalescent Center. Covenant Health subsequently sought to compel arbitration based on the arbitration clause found in the admissions agreement governing Moulds's stay in that facility. The circuit court refused to compel arbitration, finding that Braddock lacked the power to enter into an arbitration agreement on behalf of Moulds and that the admissions agreement, as a whole, was substantively unconscionable. Aggrieved, Covenant Health appeals, seeking enforcement of the arbitration provision.
¶ 2. In response, Braddock asks this Court to refuse to compel arbitration because: (1) he did not have the legal capacity to bind his mother to arbitration; (2) the arbitration clause in the admissions agreement was not supported by consideration; (3) the arbitration clause is void due to fraud in the inducement; (4) the admissions agreement, as a whole, is substantively unconscionable; and (5) the designated arbitral forum is unavailable.
¶ 3. Finding error, we reverse the judgment of the circuit court and remand this case with instructions to enforce the arbitration clause of the admissions agreement and compel arbitration.

FACTS
¶ 4. Moulds was admitted to the Picayune Convalescent Center on November 16, 2000. At that time, she was suffering from Alzheimer's disease, dementia, and depression. Due to these illnesses, her son, Braddock, signed the admissions agreement on her behalf as her healthcare surrogate. The admissions agreement contained an arbitration clause requiring both parties to submit to binding arbitration in the event of any dispute.
¶ 5. Moulds left the Picayune Convalescent Center on September 20, 2004, and was admitted to a local hospital shortly thereafter. She died in the hospital on October 2, 2004. Braddock sued Covenant Health on behalf of his mother's estate for wrongful death, claiming that the injuries she suffered while in the care of the Picayune *739 Convalescent Center contributed to her death. After the initiation of the lawsuit, Covenant Health sought to stay proceedings in the circuit court and moved to compel arbitration pursuant to the arbitration clause in the admissions agreement. The circuit court denied the motion, and it is from that ruling that Covenant Health now appeals.

DISCUSSION
¶ 6. This Court reviews an order denying a motion to compel arbitration de novo. Vicksburg Partners, L.P. v. Stephens, 911 So.2d 507, 513(¶ 9) (Miss.2005). Although not directly raised by either party in this case, as a threshold issue this Court must determine whether the Federal Arbitration Act (FAA) controls the arbitration agreement presented here.
¶ 7. Our supreme court has previously held that "singular agreements between care facilities and care patients, when taken in the aggregate, affect interstate commerce." Id. at 515(¶ 16). In this case, as in Vicksburg Partners, "since the arbitration clause is a part of a contract (the nursing home admissions agreement) evidencing in the aggregate economic activity affecting interstate commerce, the Federal Arbitration Act is applicable...." Id. at 515-16(¶18).
¶ 8. Having made the determination that the arbitration agreement in this case is governed by the FAA, we must next determine if that arbitration agreement is valid. Again we are guided by the supreme court, which has stated that "[i]n determining the validity of a motion to compel arbitration under the Federal Arbitration Act, courts generally conduct a two-pronged inquiry. The first prong has two considerations: (1) whether there is a valid arbitration agreement and (2) whether the parties' dispute is within the scope of the arbitration agreement." East Ford, Inc. v. Taylor, 826 So.2d 709, 713(¶ 9) (Miss.2002). The second prong involves an inquiry into "whether legal constraints external to the parties' agreement foreclosed arbitration of those claims." Id. at 713(¶ 10) (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)).
¶ 9. With respect to the first prong of the analysis outlined above, "[t]o determine whether the parties agreed to arbitration, we simply apply contract law." Terminix Int'l, Inc., Ltd. P'ship v. Rice, 904 So.2d 1051, 1055(¶ 9) (Miss.2004). Regarding this prong of our inquiry, Braddock asserts that he lacked the capacity to consent to arbitration as his mother's health-care surrogate or, in the alternative, that the arbitration clause is void because it lacked sufficient consideration. We address each of these issues below.

1. Braddock possessed the capacity to bind his mother to arbitration.
¶ 10. Braddock asserts that he did not have the capacity to bind his mother to arbitration while acting as her health-care surrogate under the Uniform Health-Care Decisions Act. Miss.Code Ann. §§ 41-41-201 to -229 (Rev.2005). Braddock does not dispute that he was, in fact, acting as his mother's health-care surrogate for the purposes of the Uniform Health-Care Decisions Act when she was admitted to the Picayune Convalescent Center.
¶ 11. Our supreme court recently addressed this very issue in Covenant Health Rehab. of Picayune, L.P. v. Brown, 949 So.2d 732 (Miss.2007). In Brown, the plaintiffs, as administrators of the estate of their deceased mother, filed a wrongful death suit against the nursing home in which their mother resided prior to her death. Id. at 735(¶ 1). An adult daughter *740 of the decedent signed the admissions agreement as the "responsible party" for her mother upon admission to the facility. Id. The defendants filed a motion to compel arbitration based on the admissions agreement, and the trial court denied that motion. On appeal, the supreme court held that the adult daughter of the patient, acting as a health-care surrogate, had the authority to contractually bind her mother in health-care matters under our Uniform Health-Care Decisions Act. Id. at 736-37(¶ 10).
¶ 12. In reversing the trial court's denial of the motion to compel arbitration in Brown, the supreme court implicitly held that the surrogate's authority to bind the patient extended to the arbitration clause in the admissions agreement. In this case, because Braddock does not dispute that he was acting as his mother's health-care surrogate for the purposes of the Uniform Health-Care Decisions Act, we see no reason to depart from the supreme court's holding in Brown. Therefore, we find that a health-care surrogate, acting under the provisions of the Uniform Health-Care Decisions Act, is capable of binding his or her patient to arbitration. Accordingly, we find that Braddock's argument on this issue is without merit.

2. The arbitration clause does not fail for lack of consideration.
¶ 13. Braddock also asserts that the arbitration clause should fail for lack of consideration. He relies solely on the affidavit of Keri Ladner, the facility administrator for Covenant Health, in making this argument. Braddock points to Ladner's statement that his mother would not have been refused admission to the facility had he objected to the arbitration agreement as evidence that the arbitration clause lacked consideration; therefore, the arbitration clause should have been stricken from the admissions agreement.
¶ 14. We first note that Ladner's statements are irrelevant to the issue of consideration. The only thing her statements represent is an admission that, in retrospect, Braddock could have entered into a more beneficial contract for his mother had he bargained for it. Simply because one party to a contract later admits that the other party could have successfully bargained for more beneficial terms at the time the contract was formed does not mean that the element of the contract not bargained for is void for lack of consideration. In any contract, "[a]ll that is needed to constitute a valid consideration to support an agreement or contract is that there must be either a benefit to the promissor or a detriment to the promisee. If either of these requirements exist, there is a sufficient consideration." Theobald v. Nosser, 752 So.2d 1036, 1040(¶ 15) (Miss.1999).
¶ 15. Second, even if Ladner's statements were relevant to this issue, this Court would be prevented from considering them by the parol evidence rule. It is a well-settled principle of contract law that "as an evidentiary matter, parol evidence to vary the terms of a written contract is inadmissible." Carter v. Citigroup, Inc., 938 So.2d 809, 818(¶ 41) (Miss.2006) (quoting Stephens v. Equitable Life Assurance Soc'y of the United States, 850 So.2d 78, 82(¶ 14) (Miss.2003)). Although parol evidence is sometimes admissible when there has been, among other things, a showing that a contract contains ambiguous language, here there has been no such showing. Neither party has even suggested that there is any ambiguity in the agreement.
¶ 16. Without such a showing, we must look to the agreement of the parties in order to determine whether there was sufficient *741 consideration. Again, in any contract, "[a]ll that is needed to constitute a valid consideration to support an agreement or contract is that there must be either a benefit to the promissor or a detriment to the promisee. If either of these requirements exist, there is a sufficient consideration." Theobald, 752 So.2d at 1040(¶ 15).
¶ 17. Here, there is clearly sufficient consideration to support the arbitration agreement. Both parties undertook duties toward one another under the admissions agreement. Covenant Health promised to provide care and assistance to Moulds. Braddock, on behalf of his mother, promised to pay Covenant Health for its service. The arbitration clause was one portion of that exchange, and it obligated both parties to arbitrate any dispute between them. The mutuality of exchange found throughout the admissions agreement provides ample evidence that there was sufficient consideration to support the arbitration clause; therefore, we find that the arbitration clause does not fail for lack of consideration.

3. The dispute is within the scope of the arbitration clause.
¶ 18. Although not directly addressed by either party in this appeal, under our standard of review in this case, this Court must determine that the dispute between the parties falls within the scope of the arbitration agreement in order to compel arbitration. To do so, we look to the language of the arbitration clause itself. In this case, that language is very clear. The arbitration clause states that "[t]he Resident and Responsible Party agree that any and all claims, disputes, and/or controversies between them and the Facility or its Owners, officers, directors, or employees shall be resolved by binding arbitration...." Clearly, the arbitration clause was meant to apply to any dispute, regardless of its nature, that arose between the facility and Moulds, including her son's current claim for wrongful death on behalf of her estate. Consequently, we find that the dispute between Braddock and Covenant Health falls within the scope of the arbitration clause.

4. The arbitration clause does not violate any external legal constraints.
¶ 19. Having determined that a valid arbitration agreement exists, and that the current dispute falls within the scope of that agreement, we now turn to the second prong of the test set out in East Ford, which involves an inquiry into "whether legal constraints external to the parties' agreement foreclose arbitration of those claims." East Ford, 826 So.2d at 713(¶ 10) (quoting Mitsubishi Motors Corp., 473 U.S. at 628, 105 S.Ct. 3346). The supreme court has stated that under the second prong of the East Ford test, "applicable contract defenses available under state contract law such as fraud, duress, and unconscionability may be asserted to invalidate the arbitration agreement without offending the Federal Arbitration Act." Id.
¶ 20. Specifically, Braddock asserts two of the defenses listed above, fraud and substantive unconscionability, in his argument to sustain the ruling of the circuit court and void the arbitration clause.

A. Braddock was not fraudulently induced into signing the admissions agreement.
¶ 21. Braddock argues that he was fraudulently induced into signing the admissions agreement. He again relies on the affidavit of Ladner, the facility administrator, and the fact that Ladner stated that acceptance of the arbitration clause was not a necessary precondition to *742 Mould's admittance to the facility. This statement does not give rise to a defense of fraud. As a contract defense, "[f]raud in the inducement arises when a party to a contract makes a fraudulent misrepresentation, i.e., by asserting information he knows to be untrue, for the purpose of inducing the innocent party to enter into a contract." Lacy v. Morrison, 906 So.2d 126, 129 (¶ 6) (Miss.Ct.App.2004).
¶ 22. The defense of fraud in the inducement would be appropriately raised if, for instance, Ladner had made material misrepresentations to Braddock when he signed the admissions agreement, and those misrepresentations had been meant to, and did, induce Braddock to sign the agreement. However, the facts indicate that this is not what happened. As we noted above, all that Ladner's statements demonstrate is that Braddock could have potentially bargained for a better deal from the facility, i.e., one that did not include the arbitration clause. However, the admissions agreement itself did not contain any false information, it simply contained terms that could have been altered had Braddock attempted to do so. The fact that he failed to bargain for those terms does not constitute fraud in the inducement any more than it constitutes a lack of consideration. We therefore find that Braddock was not fraudulently induced into signing the admissions agreement.

B. The arbitration clause is substantively conscionable.
¶ 23. Braddock asserts that the admissions agreement contains several provisions that previously have been found unconscionable by our supreme court, and as a consequence, this Court should void the entire admissions agreement. In the alternative, Braddock argues that the terms of the arbitration clause itself are unconscionable and that we should strike the arbitration clause from the admissions agreement. Although this Court has serious misgivings about the language included in the admissions agreement, we are compelled to confirm the substantive conscionability of the admissions agreement and the arbitration clause.
¶ 24. Braddock correctly points out that the admissions agreement that he signed contains several clauses that have exactly the same language as clauses in other nursing home admissions agreements that our supreme court has explicitly held are unconscionable. In fact, the admissions agreement in this case appears to be identical to the one at issue in Brown, discussed above.[1] Specifically, (1) the language in section C5 requiring forfeiture by the resident for all claims except those for willful acts, (2) the language in section C8 waiving liability for the criminal acts of individuals, (3) the "grievance resolution process" set out in sections E5 and E6, (4) the language limiting the recovery of actual damages in section E7, (5) the language limiting the recovery of punitive damages in section E8, (6) the language in section E12 requiring the resident to pay all costs if the resident attempts to avoid or challenge the grievance resolution process, and (7) the language of section E16 that purports to change the statute of limitations was all held to be unconscionable in Brown. Brown, 949 So.2d at 738-41 (¶¶ 16-21). Moreover, the last line of the *743 arbitration clause itself contains language identical to language the supreme court struck from the arbitration clause that was at issue in Brown. Id. at 741(¶ 23).
¶ 25. Seeing no reason to depart from the supreme court's findings in Brown, we agree with Braddock's assertion that these clauses in his mother's admissions agreement contain unconscionable language as well. We therefore strike the offending language of clauses C5, C8, E5, E6, E7, E8, E12, and E16, as well as the last line of the arbitration clause from the admissions agreement.
¶ 26. We cannot, however, agree with the remainder of Braddock's argument that because of these unconscionable provisions, we must void the entire contract, or that the arbitration clause as a whole should be voided. In Brown, when faced with exactly the same unconscionable language, the supreme court chose to merely sever the unconscionable portions of the admissions agreement and the offending portion of the arbitration clause and enforce the remaining sections, including compelling the parties to arbitrate. Given the striking similarity of these two cases, including the fact that they involve substantially identical admissions agreements, we are compelled to do the same here as the supreme court did in Brown. Accordingly, we find that the admissions agreement, absent the offending language, is substantively conscionable, and the parties are bound by it, including its arbitration clause.

5. The arbitration clause is not void for lack of an arbitral forum.
¶ 27. Finally, Braddock asserts that arbitration cannot be compelled, as no suitable arbitral forum now exists. In support of this argument, Braddock points to a policy statement by the American Arbitration Association (AAA) made in June 2002. That statement indicates that the AAA no longer administers health-care arbitrations in cases where the parties have not executed a post-dispute agreement to arbitrate. In other words, the AAA will now only arbitrate health-care disputes where the parties are not contesting arbitration.
¶ 28. Covenant Health points to the fact that a related professional organization, the American Health Lawyers Association, made a similar policy statement, which they later amended by saying that they would agree to participate in arbitrations where no post-dispute agreement had been made so long as a court of competent jurisdiction had ordered the parties to arbitrate. The AAA has apparently not made a similar statement.
¶ 29. This Court does not need to speculate, however, on whether or not the AAA might agree to arbitrate this case even though no post-dispute agreement has been executed. The arbitration clause included in the admissions agreement provides for just the sort of eventuality the parties now face. The arbitration clause states that "[i]f the agreed method of selecting an Arbitrator(s) fails for any reason. . . the appropriate circuit court, on application of a party, shall appoint one Arbitrator to arbitrate the issue. An arbitrator so appointed shall have all the powers of the one named in this agreement." Therefore, even if the AAA refuses to arbitrate this dispute, the agreement between the parties contains an alternative method for selecting an arbitrator and administering the arbitration. Accordingly, we find that the arbitration clause does not fail for lack of an appropriate arbitral forum, and Braddock's argument on this issue is without merit.
¶ 30. THE JUDGMENT OF THE CIRCUIT COURT OF PEARL RIVER COUNTY IS REVERSED AND REMANDED *744 FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
KING, C.J., LEE AND MYERS, P.JJ., CHANDLER, GRIFFIS, BARNES, ROBERTS AND CARLTON, JJ., CONCUR. IRVING, J., DISSENTS WITH SEPARATE WRITTEN OPINION.
IRVING, J., Dissenting.
¶ 31. In this case, the majority relies upon Covenant Health Rehabilitation of Picayune, L.P. v. Brown, 949 So.2d 732 (Miss.2007) to find that James Braddock's execution of the admission agreement, in his capacity as the health-care surrogate for his mother, legally bound her to an arbitration provision contained in the agreement. In Trinity Mission of Clinton, LLC d/b/a Clinton Health & Rehabilitation Center v. Barber, 988 So.2d 910 (¶ 52) (Ct.App.2007) (Irving J., concurring in part dissenting in part) (cert. granted, 977 So.2d 1144 (Miss.2008); appeal dismissed, 2008 Miss. LEXIS 185, at *1 (Miss. April 17, 2008)),[2] I agreed with the majority that Brown indeed states that a health-care surrogate has the authority to bind a patient to an arbitration provision contained in an admission agreement. However, I also explained that no such authority is granted to a surrogate under Mississippi's Uniform Health-Care Decisions Act.[3]Id. at (¶¶ 53-54). I further explained that the Brown court did not address the statutory definition of a surrogate and that because of that omission, I did not believe the Brown decision should be given the precedential value that otherwise would be due. Id. at (¶ 55). Finally, I stated my belief that "had our supreme court considered the statutory meaning of a health care decision, along with the concomitant power of a surrogate in light of that meaning, its decision in [Brown] may very well have been different." Id.
¶ 32. Therefore, for the reasons expressed in my dissent in Trinity Mission, I respectfully dissent, as the facts here are identical to the facts in Trinity Mission, with only the names of the surrogate and the patient being different.
NOTES
[1] See Brown, 949 So.2d at 737-41 (¶¶ 14-25) for an exhaustive discussion of why these particular aspects of the admissions agreement are unconscionable, including the language of the offending clauses. See also Vicksburg Partners, 911 So.2d at 525(¶ 48) and Pitts v. Watkins, 905 So.2d 553, 555-58 (¶¶ 9-20) (Miss.2005) for discussions of the unconscionability of similar terms found in other admissions agreements.
[2] The general docket indicates that the appeal was dismissed pursuant to a motion to dismiss that was filed by the Appellees and joined by the Appellants.
[3] At one point in my dissent in Barber, I mistakenly referred to the Uniform Health-Care Decisions Act as the Health Care Surrogate Act. Barber, 2005-CA-02199-COA at (¶ 52). The Act is codified as Mississippi Code Annotated sections 41-41-201 through XX-XX-XXX (Rev.2005).