CARLTON, J., DISSENTING:
 

 ¶ 18. I respectfully dissent. I would affirm the trial court's finding that Dr. Kahler's discharge-summary note indicated that Jack lacked capacity as defined by the Uniform Health-Care Decisions Act (the Act).
 
 See
 

 Miss. Code Ann. § 41-41-211
 
 (1)
 

 (Rev. 2013).
 
 [1]
 
 As a result of this finding, the trial court correctly found that Victoria, as Jack's spouse, was therefore authorized under the Act to enter into CLC's admission and arbitration agreement on behalf of Jack, thus binding Jack to the agreement.
 
 See
 

 Miss. Code Ann. § 41-41-211
 
 (2)(a).
 

 ¶ 19. The record reflects that on January 30, 2013, Dr. Kahler entered a discharge summary for Jack upon his discharge from Forrest General Hospital and subsequent transfer to CLC. The trial court observed that in the discharge summary, Dr. Kahler, as Jack's primary-care physician, diagnosed Jack with a "closed head injury with encephalopathy" and "acute delirium secondary" to his closed head injury.
 
 [2]
 
 The discharge summary also reflected that at the time of his transfer, Jack had a tracheostomy and was unable to speak. Jack's patient-care report provided by American Medical Response, the company transporting Jack from Forrest General to CLC, further documented that Jack did not speak and was "confused in nature." Additionally, patient notes provided by a nurse on January 30, 2013, reflected that Jack "did not acknowledge understanding."
 

 ¶ 20. Based on the evidence presented, the trial court opined that Dr. Kahler constituted Jack's primary-care physician as defined by Mississippi Code Annotated section 41-41-203(o) (Rev. 2013). Medical records presented at trial, showing that Dr. Kahler was responsible for and assumed primary care of Jack while at Forrest General Hospital, support this finding. The trial court also opined that Dr. Kahler's notes in Jack's medical records indicated that Jack lacked capacity as defined by statute.
 

 ¶ 21. After reviewing the record, I find that the evidence presented at trial clearly supports the trial court's finding that Victoria possessed authority as Jack's surrogate under the Act to bind him to the admission and arbitration agreement.
 
 See
 

 Brown
 
 , 949 So.2d at 736-37 (¶¶ 10-11) (overruled on other grounds) (discussing a surrogate's authority to bind a patient to an arbitration agreement contained in a nursing-home admission agreement pursuant to section 41-41-211 ). Based upon the foregoing, I submit that the trial court properly granted CLC's motion to dismiss and compel arbitration.
 

 GRIFFIS, P.J., JOINS THIS OPINION.
 

 Section 41-41-211 provides:
 

 (1) A surrogate may make a health-care decision for a patient who is an adult or emancipated minor if the patient has been determined by the primary physician to lack capacity and no agent or guardian has been appointed or the agent or guardian is not reasonably available.
 

 (2) An adult or emancipated minor may designate any individual to act as surrogate by personally informing the supervising health-care provider. In the absence of a designation, or if the designee is not reasonably available, any member of the following classes of the patient's family who is reasonably available, in descending order of priority, may act as surrogate:
 

 (a) The spouse, unless legally separated;
 

 (b) An adult child;
 

 (c) A parent; or
 

 (d) An adult brother or sister.
 

 See
 

 Covenant Health & Rehab. of Picayune L.P. v. Brown
 
 ,
 
 949 So.2d 732
 
 , 736-37 (¶¶ 10-11) (Miss. 2007) (overruled on other grounds) (admitting physician at hospital found that Brown lacked mental capacity to manage her affairs prior to signing of hospital's admission agreement).