*1094
 
 MODIFIED OPINION ON MOTION FOR REHEARING
 

 ISHEE, J„
 

 for the Court.
 

 ¶ 1. Covenant Health & Rehabilitation of Picayune, LP and Covenant Dove, Ine.’s (Covenant Health), motion for rehearing is granted; the original opinion is withdrawn, and this opinion substituted therefor. This case turns upon the effect of an arbitration agreement contained within a standard nursing home admission’s contract required by Covenant Health for nursing home admissions. After this Court issued its initial opinion, and while this case was pending in this Court upon the motion for rehearing, the supreme court issued
 
 Covenant Health & Rehabilitation of Picayune, LP v. Estate of Moulds,
 
 14 So.3d 695 (Miss.2009). As is discussed in the final issue addressed in this opinion,
 
 Estate of Moulds
 
 compels this Court to grant the Lumpkin’s motion for rehearing and affirm the Pearl River Circuit Court’s decision to refuse to compel arbitration.
 

 ¶ 2. Nellie Lumpkin, through her husband and next friend Fred Lumpkin, filed suit against Covenant Health seeking damages for personal injuries that allegedly occurred during her stay at its facility. Covenant Health subsequently moved to compel arbitration of the case based on the arbitration clause found in its standard admissions agreement. The circuit court refused to compel arbitration, finding the admissions agreement substantively unconscionable and void as a matter of law. Aggrieved, Covenant Health appealed, seeking enforcement of the arbitration provision. Lumpkin asked this Court to affirm the decision of the circuit court, and find that either: (1) no arbitration agreement was ever created, because Lumpkin’s daughter lacked capacity to bind Lumpkin to arbitration or, in the alternative, that the arbitration clause fails for lack of consideration; or (2) the arbitration clause is void due to fraud in the inducement and substantive unconscionability. In our original opinion, we rejected both arguments and reversed and remanded. However, in light of
 
 Estate of Moulds,
 
 we find that the requirement that Lumpkin’s claims be arbitrated, coupled with an additional unconscionable provision in the admissions agreement, rendered the arbitration clause unconscionable and unenforceable. We, therefore, affirm the judgment of the circuit court and remand for further proceedings consistent with this opinion.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 3. On April 11, 2003, Lumpkin was admitted to the Picayune Convalescent Center (owned and operated by Covenant Health). She was accompanied by her daughter, Beverly McDaniel. Due to several illnesses, including Parkinson’s disease, psychosis, and dementia, which prevented Lumpkin from fully participating in the admissions process, McDaniel filled out all the admissions paperwork and signed the admissions agreement. That agreement contained, among other things, an arbitration clause requiring both parties to submit to arbitration in the event any dispute arose between them.
 

 ¶ 4. Lumpkin left the Picayune Convalescent Center on December 23, 2004. In November 2006, she filed suit against Covenant Health, alleging negligent treatment and malpractice during her stay at the center. On December 11, 2006, Covenant Health filed its motion to compel arbitration, which was based on the arbitration clause contained in the admissions agreement used at the time Lumpkin was admitted to the Picayune Center. In March 2007, the circuit court denied Covenant Health’s motion to compel arbitration, and it is from that ruling that Covenant Health appealed.
 

 
 *1095
 
 ¶ 5. In our original opinion, we found that eight specific clauses of the admissions agreement were identical to clauses previously found unconscionable by the supreme court.
 
 Covenant Health & Rehab Picayune, L.P. v. Lumpkin,
 
 2007-CA-00449-COA (¶ 22) (Miss.Ct.App. Mar. 9, 2009) (citing
 
 Covenant Health Rehab of Picayune, L.P. v. Brown,
 
 949 So.2d 732, 787-41 (¶¶ 14-25) (Miss.2007)). However, we went on to find in light of relevant supreme court precedent that the arbitration agreement itself was enforceable. We held:
 

 We cannot, however, agree with the remainder of Lumpkin’s argument, that because of these unconscionable provisions we must void the entire contract, or that the arbitration clause as a whole should be voided. In
 
 Brown,
 
 when faced with exactly the same unconscionable language, the supreme court chose to merely sever the unconscionable portions of the admissions agreement and the offending portion of the arbitration clause, and enforce the remaining sections, including compelling the parties to arbitrate. Given the striking similarity of these two cases, including the fact that they involve substantially identical admissions agreements, we are compelled to do the same here as the supreme court did in
 
 Brown.
 
 Accordingly, we find that the admissions agreement, absent the offending language, is substantively conscionable and the parties are bound by it, including its arbitration clause.
 

 Lumpkin,
 
 2007-CA-00449-COA at (¶ 23).
 

 ¶ 6. Subsequent to our initial decision, the supreme court decided
 
 Estate of Moulds,
 
 in which it held that an arbitration agreement identical to that present in this case was unconscionable and, therefore, unenforceable.
 
 Estate of Moulds,
 
 14 So.3d at 703(¶ 26). Accordingly, we must reexamine our analysis of this issue in light of the supreme court’s guidance.
 

 DISCUSSION
 

 ¶ 7. This Court reviews orders denying motions to compel arbitration de novo.
 
 Vicksburg Partners, L.P. v. Stephens,
 
 911 So.2d 507, 513 (¶9) (Miss.2005). Although not directly raised by either party in this case, as a threshold issue this Court must determine whether the Federal Arbitration Act (FAA) controls the arbitration agreement presented here. Our supreme court has previously held that “singular agreements between care facilities and care patients, when taken in the aggregate, affect interstate commerce.”
 
 Id.
 
 at 515 (¶ 16). In this case, as in
 
 Vicksburg Partners,
 
 “since the arbitration clause is a part of a contract (the nursing home admissions agreement) evidencing in the aggregate economic activity affecting interstate commerce, the [FAA] is applicable....”
 
 Id.
 
 at 515-16 (¶ 18). Nevertheless, even though the FAA is applicable, “applicable contract defenses available under state contract law such as fraud, duress, and unconscionability may be asserted to invalidate the arbitration agreement without offending the [FAA].”
 
 Estate of Moulds,
 
 14 So.3d at 699(¶ 9) (quoting
 
 East Ford, Inc. v. Taylor,
 
 826 So.2d 709, 713 (¶ 10) (Miss.2002)).
 

 ¶ 8. Having made the determination that the arbitration agreement in this case is governed by the FAA, we must next determine if that arbitration agreement is valid. Again we are guided by our supreme court, which has stated that: “In determining the validity of a motion to compel arbitration under the FAA, courts generally conduct a two-pronged inquiry. The first prong has two considerations: (1) whether there is a valid arbitration agreement and (2) whether the parties’ dispute is within the scope of the arbitration
 
 *1096
 
 agreement.”
 
 Taylor,
 
 826 So.2d at 713 (¶ 9). The second prong involves an inquiry into “whether legal constraints external to the parties’ agreement foreclosed arbitration of those claims.”
 
 Id.
 
 at 713 (¶ 10) (quoting
 
 Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,
 
 473 U.S. 614, 626,105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)).
 

 ¶ 9. With respect to the first prong of the analysis outlined above, “[t]o determine whether the parties agreed to arbitration, we simply apply contract law.”
 
 Terminix Int’l, Inc. v. Rice,
 
 904 So.2d 1051, 1055 (¶ 9) (Miss.2004). Regarding this prong of our inquiry, Lumpkin asserts that her daughter, Beverly, lacked the capacity to consent to arbitration as her healthcare surrogate and, in the alternative, that the arbitration clause is void because it lacked sufficient consideration. We address each of these issues below.
 

 I. Beverly McDaniel possessed the capacity to bind her mother to arbitration.
 

 ¶ 10. Lumpkin asserts that her daughter, Beverly McDaniel, did not have the capacity to bind her to arbitration while acting as her healthcare surrogate under the Uniform Health-Care Decisions Act. Miss.Code Ann. §§ 41-41-201 to -229 (Rev.2009). Lumpkin does not dispute that McDaniel was, in fact, acting as her healthcare surrogate for the purposes of that section when she was admitted to the Picayune Convalescent Center.
 

 ¶ 11. Our supreme court addressed this very issue in
 
 Brown.
 
 In
 
 Brown,
 
 the plaintiffs, as administrators of the estate of their deceased mother, filed a wrongful-death suit against the nursing home in which their mother resided prior to death.
 
 Brown
 
 at 735 (¶ 1). An adult daughter of the deceased signed the admissions agreement as the “responsible party” for her mother upon admission to the facility.
 
 Id.
 
 The defendants filed a motion to compel arbitration based on the admissions agreement, and the trial court denied that motion. On appeal, the supreme court held that the adult daughter of the patient, acting as a healthcare surrogate, had the authority to contractually bind her mother in healthcare matters under our Uniform Health-Care Decisions Act.
 
 Id.
 
 at (¶ 3).
 

 ¶ 12. In reversing the trial court’s denial of the motion to compel arbitration in
 
 Brown,
 
 the supreme court implicitly upheld that the surrogate’s authority to bind the patient extended to the arbitration clause in the admissions agreement. In this case, because Lumpkin does not dispute that her daughter was acting as her healthcare surrogate for the purposes of the Uniform Health-Care Decisions Act, we see no reason to depart from the supreme court’s holding in
 
 Brown.
 
 Therefore, we find that a healthcare surrogate, acting under the provisions of the Uniform Health-Care Decisions Act, is capable of binding his or her patient to arbitration. Accordingly, we find that Lumpkin’s argument on this issue is without merit.
 

 II. The arbitration clause does not fail for lack of consideration.
 

 ¶ 13. Lumpkin also asserts that the arbitration clause should fail for lack of consideration. She relies solely on the affidavit of Keri Ladner, the facility administrator for Covenant Health, in making this argument. Lumpkin points to Ladner’s statement, that Lumpkin would not have been refused admission to the facility had she objected to the arbitration agreement, as evidence that the arbitration clause lacked consideration; therefore, the arbitration clause should be stricken from the admissions agreement.
 

 ¶ 14. We first note that Lad-ner’s statements are irrelevant to the issue
 
 *1097
 
 of consideration. The only thing her statements represent is an admission that, in retrospect, Lumpkin’s daughter could have entered into a more beneficial contract for her mother had she bargained for it. Simply because one party to a contract later admits that the other party could have successfully bargained for more beneficial terms at the time the contract was formed does not mean that the element of the contract not bargained for is void for lack of consideration. In any contract, “[a]ll that is needed to constitute a valid consideration to support an agreement or contract is that there must be either a benefit to the promissor or a detriment to the promisee. If either of these requirements exist, there is a sufficient consideration.”
 
 Theobald v. Nosser,
 
 752 So.2d 1036, 1040 (¶ 15) (Miss.1999).
 

 ¶ 15. Second, even if Ladner’s statements were relevant to this issue, this Court would be prevented from considering them by the parol evidence rule. It is a well-settled principle of contract law that “a written contract cannot be varied by prior oral agreements. Moreover, as an evidentiary matter, parol evidence to vary the terms of a written contract is inadmissible.”
 
 Carter v. Citigroup, Inc.,
 
 938 So.2d 809, 818(¶ 41) (Miss.2006) (quoting
 
 Stephens v. Equitable Life Assurance Soc’y of the United States,
 
 850 So.2d 78, 83 (¶ 14) (Miss.2003)). Although parol evidence is sometimes admissible when there has been, among other things, a showing that a contract contains ambiguous language, here there has been no such showing. Neither party has even suggested that there is any ambiguity in the agreement.
 

 ¶ 16. Without such a showing, we must look to the agreement of the parties in order to determine whether there was sufficient consideration. Again, in any contract, “[a]ll that is needed to constitute a valid consideration to support an agreement or contract is that there must be either a benefit to the promissor or a detriment to the promisee. If either of these requirements exist, there is a sufficient consideration.”
 
 Theobald,
 
 752 So.2d at 1040 (¶ 15).
 

 ¶ 17. Here, there is clearly sufficient consideration to support the arbitration agreement. Both parties undertook duties toward one another under the admissions agreement. Covenant Health promised to provide care and assistance to Lumpkin. Lumpkin promised to pay Covenant Health for its service. The arbitration clause was one portion of that exchange, and it obligated both parties to arbitrate any dispute between them. The mutuality of exchange found throughout the admissions agreement provides ample evidence that there was sufficient consideration to support the arbitration clause; therefore, we find that the arbitration clause does not fail for lack of consideration.
 

 III. The dispute is within the scope of the arbitration clause.
 

 ¶ 18. Although not directly addressed by either party in this appeal, under our standard of review in this case, this Court must determine that the dispute between the parties falls within the scope of the arbitration agreement in order to compel arbitration. To do so, we look to the language of the arbitration clause itself. In this case, that language is very clear. The arbitration clause states that “[t]he Resident and Responsible Party agree that any and all claims, disputes, and/or controversies between them and the Facility or its Owners, officers, directors, or employees shall be resolved by binding arbitration.... ” Clearly, the arbitration clause was meant to apply to any dispute, regardless of its nature, that arose between the facility and Lumpkin, including her current claims of negligence and mal
 
 *1098
 
 practice. Consequently, we find that the dispute between Lumpkin and Covenant Health falls within the scope of the arbitration clause.
 

 IV. The arbitration clause does not violate any external legal constraints.
 

 ¶ 19. Having determined that a valid arbitration agreement exists, and that the current dispute falls within the scope of that agreement, we now turn to the second prong of the test set out in
 
 East Ford,
 
 which involves an inquiry into “whether legal constraints external to the parties’ agreement foreclose arbitration of those claims.”
 
 East Ford,
 
 826 So.2d at 713 (¶ 10) (quoting
 
 Mitsubishi Motors Corp.,
 
 473 U.S. at 626, 105 S.Ct. 3346). The supreme court has stated that, under the second prong of the
 
 East Ford
 
 test, “applicable contract defenses available under state contract law such as fraud, duress, and unconscionability may be asserted to invalidate the arbitration agreement without offending the [FAA].”
 
 Id.
 

 ¶ 20. Lumpkin specifically asserts two of the defenses listed above, fraud and substantive unconscionability, in her argument to sustain the ruling of the trial court and void the arbitration clause.
 

 A. Beverly was not fraudulently induced into signing the admissions agreement.
 

 ¶ 21. Lumpkin argues that her daughter, ■ Beverly, was fraudulently induced into signing the admissions agreement. She again relies on the affidavit of Ladner, the facility administrator, and the fact that Ladner stated that acceptance of the arbitration clause was not a necessary precondition to her admittance to the facility. This statement does not give rise to a defense of fraud. As a contract defense, “[f]raud in the inducement arises when a party to a contract makes a fraudulent misrepresentation, i.e., by asserting information he knows to be untrue, for the purpose of inducing the innocent party to enter into a contract.”
 
 Lacy v. Morrison,
 
 906 So.2d 126, 129 (¶ 6) (Miss.Ct.App.2004).
 

 ¶ 22. The defense of fraud in the inducement would be appropriately raised if, for instance, Ladner had made material misrepresentations to Beverly when she signed the admissions agreement, and those misrepresentations had been meant to, and did, induce Beverly to sign the agreement. However, the facts indicate that this is not what happened. As we noted above, all that Ladner’s statements demonstrate is that Beverly could have potentially bargained for a better deal from the facility, i.e., one that did not include the arbitration clause. However, the admissions agreement itself did not contain any false information; it simply contained terms that could have been altered had Beverly attempted to do so. The fact that she failed to bargain for those terms does not constitute fraud any more than it constitutes a lack of consideration; therefore, Beverly was not fraudulently induced into signing the admissions agreement.
 

 B. The arbitration clause is substantively unconscionable.
 

 ¶ 23. We come now to the final issue raised in this appeal. Lumpkin correctly points out that the admissions agreement her daughter signed contains several clauses that have exactly the same language as clauses in other nursing home admissions agreements that our supreme court has explicitly held are unconscionable. In fact, the admissions agreement in this case appears to be identical to the one
 
 *1099
 
 at issue in
 
 Brown,
 
 discussed above.
 
 [1]
 
 Specifically, the following sections were held to be unconscionable in
 
 Brown:
 
 (1) the language in section C5 requiring forfeiture by the resident for all claims except those for willful acts, (2) the language in section C8 waiving liability for the criminal acts of individuals, (3) the “grievance resolution process” set out in sections E5 and E6, (4) the language limiting the recovery of actual damages in section E7, (5) the language limiting the recovery of punitive damages in section E8, (6) the language in section E12 requiring the resident to pay all costs if the resident attempts to avoid or challenge the grievance resolution process, and (7) the language of section E16 that purports to change the statute of limitations were all held to be unconscionable in
 
 Brown.
 
 Moreover, the last line of the arbitration clause itself contains language identical to language the supreme court struck from the arbitration clause that was at issue in
 
 Brown.
 
 Seeing no reason to depart from the supreme court’s findings in
 
 Brown,
 
 we agree with Lumpkin’s assertion that these clauses in her admissions agreement contain unconscionable language as well.
 

 ¶ 24. Nevertheless, in our original opinion, we found that while we had “misgivings” about the arbitration clause, in light of
 
 Brown’s
 
 holding that the cumulative effect of the unconscionable provisions did not render the entire contract unenforceable, and that an identical arbitration clause was enforceable, we reversed the circuit court’s holding that the arbitration clause at issue was unenforceable.
 
 Lumpkin,
 
 2007-CA-00449-COA (¶¶ 21-23) (citing Brown, 949 So.2d at 741 (¶ 25)). In
 
 Moulds,
 
 the supreme court revisited this issue. The
 
 Moulds
 
 court surveyed out-of-state cases dealing with similar contracts.
 
 Moulds,
 
 14 So.3d at 703-06 (¶¶ 26-34).
 
 Moulds
 
 then went on to hold that an arbitration clause identical to that found in the case at bar was unconscionable and unenforceable, and overruled its prior precedent.
 
 Id.
 
 at 706 (¶ 35).
 

 ¶ 25. In revisiting the issue of whether the arbitration clause at issue is unconscionable in light of
 
 Moulds,
 
 we hold that the circuit court did not err in refusing to compel arbitration, and we remand this issue to the circuit court for further proceedings consistent with this opinion.
 

 ¶ 26. THE JUDGMENT OF THE CIRCUIT COURT OF PEARL RIVER COUNTY IS AFFIRMED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES AND ROBERTS, JJ., CONCUR. CARLTON AND MAXWELL, JJ., NOT PARTICIPATING.
 

 [1]
 

 .
 
 See Brown,
 
 949 So.2d at 737-41 (¶¶ 14-25) for an exhaustive discussion of why these particular aspects of the admissions agreement are unconscionable, including the language of the offending clauses.
 
 See also Vicksburg Partners,
 
 911 So.2d at 525(¶ 48) and
 
 Pitts v. Watkins,
 
 905 So.2d 553, 555-58 (¶¶ 9-20) (Miss.2005) for discussions of the unconscionability of similar terms found in other admissions agreements.